**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| **MOHAMMED ALI AL JUAIFARI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO.** |
| | ) | |
| **GOOGLE, LLC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

## I. NATURE OF THE CASE

1. This is an action brought by Plaintiff, Mohammed Ali Al Juaifari ("Juaifari"), by counsel, against Defendant, Google, LLC ("Defendant") alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended 42 U.S.C. §2000e *et. seq*., the Americans with Disabilities Act of 1990, ("ADA"), as amended, 42 U.S.C. §12101 *et. seq*.

## II. PARTIES

2. Juaifari, who was employed remotely by Defendant, is a resident of Allen County, Indiana, and at all relevant times to this action, resided within the geographical boundaries of the Northern District of Indiana.

3. Defendant is a foreign limited liability company formed in Delaware. Defendant maintains offices and routinely conducts business within the geographical boundaries of the Northern District of Indiana.

## III. JURISDICTION AND VENUE

4. Jurisdiction is conferred on this Court over the subject matter of this litigation pursuant to 28 U.S.C. §1331; 28 U.S.C. §1343; 42 U.S.C. §2000e-5(f)(3); and 42 U.S.C. §12117(a).

5. Defendant is an "employer" as that term is defined by 42 U.S.C. §2000e(b); 42 U.S.C §12111(5)(A); and 29 U.S.C. §2611(4).

6. Juaifari was an "employee" as that term is defined by 42 U.S.C. §2000e(f); 42 U.S.C. §12111(4); and was an "eligible employee" as defined by 29 U.S.C. §2611(2).

7. Juaifari has a "disability" as that term is defined by 42 U.S.C. §12102(2).

8. Juaifari satisfied his obligation to exhaust his administrative remedies having timely filed a Charge of Discrimination (Charge No.470-2024-03098) with the U.S. Equal Employment Opportunity Commission ("EEOC") against Defendant alleging discrimination based on his race, sex, religion, national origin, disability, and retaliation. Juaifari received his Notice of Suit Rights and timely files this action.

9. A substantial part of the events, transactions, and occurrences concerning this case arose in the geographical environs of the Southern District of Indiana; thus, venue is proper in this court.

## IV. FACTUAL ALLEGATIONS

10. Juaifari, who is Middle Eastern/Arab descent, began working for Defendant on or about June 17, 2024, as an L3 Data Center Technician/IC3.

11. At all relevant times, Juaifari met or exceeded Defendant's legitimate performance expectations.

12. During his employment, Juaifari reported to Mousa Kadiri ("Kadiri"), Defendant's Data Center Server Operations Manager. Kadiri reported to Nicolas Sammur, Defendant's skip-level manager.

13. In or about August 2024, Juaifari became ill while training at Defendant's Columbus, Indiana location. Juaifari promptly texted Kadiri to inform him of his absence due to being ill. Kadiri acknowledged the text and responded.

14. Following this interaction, Kadiri attempted to tell Defendant's HR that Juaifari never provided notice of his absence. After Juaifari provided the text message to HR, Kadiri threatened to have their communications "audited."

15. Due to this incident and increasing threats form Kadiri, Juaifari requested a transfer to another manager and/or department. Sammur denied this request.

16. In or about September 2024, Kadiri altered a document concerning a 1:1 meeting between himself and Juaifari, changing his location to show "out of office" in an attempt to say that he had never spoken with Juaifari.

17. On or about October 29, 2024, Kadiri gave Juaifari a formal write-up for submitting his timecard and expense report late. No one else received a write-up for such a common occurrence.

18. On or about November 14-19, 2024, Kadiri requested that everyone submit accomplishments and peer references for feedback. Juaifari timely complied with this request and Kadiri confirmed receipt and said he would follow up with the noted references.

19. In or about December 2024, Kadiri intentionally failed to follow up with the peer references Juaifari provided in November 2024. Instead, Kadiri submitted false and/or misleading performance reviews to higher-level management regarding Juaifari.

20. As a result, Juaifari was labeled "moderate impact," which stalled his career progression and transfer opportunities. Kadiri's review failed to acknowledge that in 2024 Juaifari had: developed an automated "Boots on the Ground" safety reminder system that achieved 100% compliance, set up printers and a Tech Stop support station at the new site, served as a Noogler buddy for new hires, helped establish a local Employees Resource Group, traveled to Defendant's IDI data center in Atlanta to assist with a critical hardware delivery project, and earned a spot bonus form Becca Beer, a manager at IDI.

21. Similarly situated coworkers who were not Middle Eastern and or who did not have disabilities had similar or worse backlogs and time entry issues but were not rated "moderate impact," were not blocked from transfers, and were not disciplined or terminated.

22. On or about January 2, 2025, Juaifari informed Kadiri that he would be traveling to Defendant's IDI data center in Atlanta for business on Friday, January 3, 2025, and that he would not be in the office. This communication occurred near the end of the workday. Kadiri responded but did not engage in any real discussion until the following morning.

23. On or about January 3, 2025, Kadiri expressed surprise that Juaifari was driving to Atlanta, a journey exceeding ten hours. Juaifari had consulted both the travel team and payroll regarding whether he could drive his personal vehicle and record that time as business travel. Juaifari was told that driving was permitted, that there was no limit on travel time, and that he should log his time as travel.

24. After Juaifari relied on this guidance and confirmed it in writing for Kadiri, Kadiri responded that if Juaifari chose to drive, that was "on you," and said that Juaifari needed to take vacation for Friday. Juaifari reiterated that he was following guidance given by the travel and payroll teams and shared the communication with Kadiri.

25. Shortly thereafter, Kadiri informed Juaifari that he would be "following up with an email" and that, going forward, Juaifari was "no longer approved for travel." This revocation of an already approved business trip and the blanket denial of future travel occurred soon after Juaifari relied on HR and the travel team's guidance, and it was directed only at Juaifari. No one else had their business travel revoked.

26. On or about January 23, 2025, Kadiri asked that Juaifari submit a potential resolution to their working relationship. Juaifari complied with this request and sent a detailed summary of actions that could be taken between the two.

27. On or about January 28, 2025, Juaifari informed HR of his concerns and issues with Kadiri. Specifically, Juaifari complained of discrimination and retaliation and noted that Kadiri gave him the lowest performance rating within his department. After submitting this complaint, Kadiri retaliated against Juaifari by revoking other previously approved business travel.

28. Juaifari also raised these concerns with Sammur, but during their meeting, Sammur accused Juaifari of lying about the situation rather than investigating his concerns.

29. Between January and February 2025, Kadiri began to pressure Juaifari into dropping all of his complaints against him.

30. In or about February 2025, Juaifari was scheduled for eye surgery and properly filed for short-term disability and medical leave under the ADA through Defendant's third-party administrator, Sedgwick. The leave was approved.

31. In addition to his eye condition, Juaifari has a documented anxiety disorder, a mental health condition that substantially limits one or more major life activities. Juaifari

disclosed this condition and related treatment to HR and Employee Relations, and Defendant, through Sedgwick, approved medical leave related to this disability.

32. On or about March 28, 2025, Juaifari submitted a formal complaint against Kadiri to Toni Crenshaw, Defendant's Employee Relations. In the complaint, Juaifari complained of discrimination, retaliation, and unethical actions by Kadiri.

33. On or about April 2, 2025, Juaifari shared with Kadiri that he was attempting to compile their interactions for Employee Relations given his complaint. Kadiri responded, "That's not going to work for me." Juaifari reported this statement to Employee Relations.

34. Juaifari was scheduled to return to work on or about May 29, 2025, following his eye surgery. However, he needed a couple more days to recover and properly used sick leave between May 29 and June 3, 2025.

35. On or about June 4, 2025, Juaifari returned to work without incident.

36. Shortly after his return to work, on or about July 25, 2025, Juaifari was terminated.

37. Similarly situated non-Middle Eastern/Arab coworkers and coworkers without disabilities were not written up, given negative performance reviews, and or terminated under similar circumstances.

38. Defendant discriminated and retaliated against Juaifari based on his disability in violation of the Americans with Disabilities Act.

39. Defendant discriminated and retaliated against Juaifari based on his race and national origin in violation of the Title VII. Defendant also subjected Juaifari to a hostile work environment.

40. Juaifari has been damaged by Defendants' actions.

## V. CAUSES OF ACTION

### COUNT I: TITLE VII – RACE DISCRIMINATION

41. Juaifari hereby incorporates paragraphs one (1) through forty (40) of his Complaint as if the same were set forth at length herein.

42. Juaifari is of Middle Eastern/Arab descent.

43. Defendant discriminated against Juaifari on the basis of his race by subjecting him to disparate treatment/impact and by terminating his employment.

44. Defendant's actions were willful, intentional and done with reckless disregard for Juaifari's rights as protected by Title VII.

45. Juaifari has suffered damages as a result of Defendant's unlawful actions.

### COUNT II: ADA – DISABILITY DISCRIMINATION

46. Juaifari hereby incorporates paragraphs one (1) through forty-five (45) of his Complaint as if the same were set forth at length herein.

47. Juaifari is an individual with a qualified disability under the ADA.

48. Defendant discriminated against Juaifari on the basis of his actual or perceived disability by subjecting his to disparate treatment/impact; and failing to engage in the interactive process in good faith; and by terminating his employment.

49. Defendant's actions were willful, intentional and done with reckless disregard for Juaifari's rights as protected by the ADA.

50. Juaifari has suffered damages as a result of Defendant's unlawful actions.

### COUNT V: TITLE VII – NATIONAL ORIGIN DISCRIMINATION

51. Juaifari hereby incorporates paragraphs (1) through fifty (50) of his Complaint as if the same were set forth at length herein.

52. Juaifari is of Middle Eastern/Arab national origin.

53. Defendant discriminated against Juaifari on the basis of his national origin by subjecting him to disparate treatment/impact and by terminating his employment.

54. Defendant's actions were willful, intentional and done with reckless disregard for Juaifari's rights as protected by Title VII.

55. Juaifari has suffered damages as a result of Defendant's unlawful actions.

**COUNT VII: RETALIATION IN VIOLATION OF TITLE VII AND ADA**

56. Juaifari hereby incorporates paragraphs one (1) through fifty-five (55) of his Complaint as if the same were set forth at length herein.

57. Juaifari engaged in a protected activity when he reported discrimination based on race and national origin; requesting accommodations for his disabilities.

58. Defendant retaliated against Juaifari for engaging in protected activities by terminating his employment.

59. Defendant's actions were willful, intentional and done with reckless disregard for Juaifari's rights as protected by the Title VII and ADA.

60. Juaifari has suffered damages as a result of Defendant's unlawful actions.

## VI. REQUESTED RELIEF

**WHEREFORE**, Plaintiff, Mohammed Ali Al Juaifari, respectfully requests that this Court enter judgment in his favor and award him the following relief:

1. Reinstate Plaintiff to the position, salary, and seniority level she would have enjoyed but for Defendant's unlawful employment actions, or award his front pay in lieu thereof;

2. Award Plaintiff all wages, benefits, compensation, and other monetary loss suffered as a result of Defendant's unlawful actions;

3. Award Plaintiff compensation for any and all other damages suffered as a consequence of Defendant's unlawful actions;

4. Award Plaintiff compensatory damages for violations of Title VII and the ADA;
5. Award Plaintiff punitive damages for Defendants' violations of Title VII and the ADA;
6. award Plaintiff all costs and attorney's fees incurred as a result of bringing this action;
7. Award Plaintiff pre- and post-judgment interest on all sums recoverable; and
8. Award Plaintiff all other legal and/or equitable relief this Court sees fit to grant.

Respectfully submitted,

By: */s/ Taylor Ferguson*
Taylor Ferguson
BIESECKER DUTKANYCH & MACER, LLC
144 North Delaware Street
Indianapolis, IN 46204
Office: (317) 991-4765
Facsimile: (812) 424-1005
E-Mail: tferguson@bdlegal.com

*Attorney for Plaintiff, Mohammed Ali Al Juaifari*

**DEMAND FOR JURY TRIAL**

Plaintiff, Mohammed Ali Al Juaifari, by counsel, requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

By: */s/ Taylor Ferguson*
Taylor Ferguson
BIESECKER DUTKANYCH & MACER, LLC
144 North Delaware Street
Indianapolis, IN 46204
Office: (317) 991-4765
Facsimile: (812) 424-1005
E-Mail: tferguson@bdlegal.com

*Attorney for Plaintiff, Mohammed Ali Al Juaifari*